## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CATHERINE VIOLA FAST,

    *Plaintiff*,

*v.*                   CASE NO. 10-CV-14765

COMMISSIONER OF          DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"). This matter is currently before this Court on cross-motions for summary judgment. (Docs. 17, 21.)

Plaintiff was 59 years of age at the time of the most recent administrative hearing. (Doc. 9, Transcript at 28, 30-31.) Plaintiff's employment history includes work as a child and adult care provider, a cook, and a dietary aide. (Tr. at 179.) Plaintiff filed the instant claim on October 5, 2007, alleging that she became unable to work on April 29, 2004. (Tr. at 138.) The claim was denied at the initial administrative stages. (Tr. at 46.) In denying Plaintiff's claim, the Commissioner considered disorders of back, discogenic and degenerative, and carpal tunnel syndrome as possible bases for disability. (*Id.*) On March 16, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ")

B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 8-19.) In a decision dated March 31, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on April 21, 2010. (Tr. at 5.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 1, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On December 1, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to

the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

## C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements on March 31, 2008, and that Plaintiff had not engaged in substantial gainful activity from April 29, 2004, through her date last insured of March 31, 2008. (Tr. at 13.) At step two, the ALJ found that Plaintiff's degenerative

changes of the lumbar and cervical spine (status post-laminectomy), obesity, carpal tunnel syndrome (post-left release procedure), arthritic changes of the knees, osteoarthritic changes, bilateral thumbs, and history of high blood pressure were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a fast food worker and dietary aide. (Tr. at 18.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

**E.    Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff had "[m]inimal degenerative arthritic changes" in the right and left knees in November 2004. (Tr. at 469.) Plaintiff was discharged from physical therapy with a home exercise program that month. (Tr. at 471.)

On June 21, 2005, Ryan Carver, M.D., noted that Plaintiff had complained of falling but stated that he did "not think that these are related to either her neck or low back" because "[t]here is no evidence of myelopathy on today's exam, nor is there evidence of any significant lumbar nerve compression." (Tr. at 484.) Dr. Carver then noted that Plaintiff "has a cane at home and she was advised to use it to reduce her risk of falls." (Tr. at 484.)

Plaintiff underwent carpal tunnel release of the left wrist on August 30, 2005. (Tr. at 438-43, 446-49.) An MRI of the lumbar spine taken on June 21, 2005, noted a previous laminectomy (in 1990) and revealed "[m]ild disc space narrowing and discogenic degenerative changes at L3-L4, L4-L5, and L5-S1 levels" as well as "[l]ower lumbar facet arthropathy" and a "prominent

posterior-inferior supr at L3 vertebral body protrudes into expected region of spinal canal." (Tr. at 34, 445.) An MRI of the cervical spine taken on September 21, 2005, showed "[m]ild discogenic degenerative changes in lower cervical spine" and "[m]ild narrowing involving C5-C6 and C6-C7 neural foramina bilaterally." (Tr. at 444.) Plaintiff's neck and back pain was treated with prescription pain medication. (Tr. at 475.)

An MRI of the lumbosacral spine taken on September 22, 2007, revealed "[m]ulti-level disc disease with a disc herniation at L5-S1 on the right with most likely a disc herniation of L5-S1 on the right within a post operative focus." (Tr. at 264, 275-76.) In addition, there was "[e]vidence of disc protrusions at L4-5 and L3-4 associated with thickening of the ligamentum flavum" and the report stated that "[t]he possibility of a bladder outlet obstruction in this patient should be considered." (Tr. at 264, 276.)

On October 19, 2007, a pelvic ultrasound revealed "obvious incomplete emptying of the bladder" such that a cytoscopy should be performed. (Tr. at 229, 261.) A radiology report of the cervical spine taken on October 19, 2007, showed "[m]ulti-level degenerative disc disease associated with facet joint and uncovertebral joint spondyloarthropathy." (Tr. at 262, 274.) On October 31, 2007, a radiology report concluded that Plaintiff's liver and pancreas were "unremarkable," there was "no evidence of [gallbladder] stone or any other apparent abnormality" and there was "no evidence of intra-hepatic bile duct dilation." (Tr. at 260, 272.) Thus, the study was "negative." (*Id.*)

On November 7, 2007, Plaintiff was examined by her treating physician, Dr. Schall, who found that her strength was 5 out of 5 in her elbows and pelvis areas but was 4 out of 5 in her hands and feet. (Tr. at 345.)

On November 21, 2007, Plaintiff underwent a "flexible cytoscopy" which was "normal." (Tr. at 226, 246.) Also on November 21, 2007, a CTA of the aorta ileofemoral run off was an "[e]ssentially normal run off study from the level of the aortic bifurcation down to the proximal pedal arteries," however, an ovarian cyst was also noted. (Tr. at 259, 270.) A renal cytoscopy taken that same day was also "essentially normal." (Tr. at 513.)

On January 17, 2008, Dale R. McCrie, D.O., indicated that the "cystic structure" revealed on the CT scan was "probably ovarian" and that an "exploratory laparotomy and excision" was planned unless the cyst was malignant. (Tr. at 278.) On February 20, 2008, Plaintiff underwent an "[e]xploratory laparotomy with right oophorectomy." (Tr. at 283, 284-99.) No malignancy was seen. (Tr. at 283.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on March 10, 2008, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or sit for 6 hours in an 8-hour workday and was unlimited in her ability to push or pull. (Tr. at 301.) Plaintiff was found to be occasionally limited in all postural areas due to chronic back pain and unlimited in the manipulative, visual, communicative and environmental areas. (Tr. at 302-04.) There was no treating or examining source statement on file to compare with the findings. (Tr. at 306.)[2]

On March 19, 2008, Plaintiff was examined by her treating physician, Dr. Schall, who found that her musculoskeletal strength was 5 out of 5 in all six areas from her pelvis upwards and was "4+" and 4 out of 5 in her feet. (Tr. at 339.) "Antalgia" and "imbalance" were also noted. (Tr. at 339.)

_____

[2]A previous RFC completed in November 2005 was also included in the record. (Tr. at 485-90.)

9

On July 3, 2008, Dr. Schall filled out a form indicating that Plaintiff's "level of pain with sustained walking/standing" was "severe," that her complaints were consistent with objective findings, that her pain "frequently" "interferes" with her "ability to maintain attention and concentration to complete tasks in a timely manner," and that she does not need to elevate her lower extremities for 2 or more hours in an 8-hour period, but he checked "no" when answering the question whether Plaintiff can "stand/walk six hours of an eight hours/day on a sustained basis." (Tr. at 372.)

On January 1, 2009, Plaintiff's mammogram was normal. (Tr. at 424.) On April 14, 2009, a bilateral renal ultrasound revealed "no acute disease." (Tr. at 378, 389.) A CT scan of the pelvis taken on April 22, 2009, showed "[t]iny nonobstructive renal stones," a "9 mm fat-containing lesion in the left kidney consistent with angiomyalipoma," a "1.6 cm left adrenal adenoma," and "DJD involving the lumbar spine with posterior osteophytes causing stenosis of the spinal canal." (Tr. at 508.)

On May 1, 2009, Plaintiff's stress echocardiogram was "normal." (Tr. at 386-88, 419-21.)

On August 24, 2009, Dr. Schall noted that Plaintiff's strength was 4 out of 5 everywhere except for her left hand which was 5 out of 5. (Tr. at 435.) On September 3, 2009, images of Plaintiff's right hand showed "[m]ild degenerative changes." (Tr. at 504.) Plaintiff was evaluated for physical therapy on September 3, 2009, at which time the treatment goals included "[g]ait training, balance" and "strengthening." (Tr. at 518.) It was noted that Plaintiff's rehabilitation potential was "good." (Tr. at 518.)

On September 24, 2009, Dr. Schall prescribed a walking cane for Plaintiff. (Tr. at 495.)

An MRI taken on September 30, 2009, showed:

1. Stable appearance of postoperative changes at L5-S1, with nonspecific soft tissue for tearing the right S1 nerve root in the subarticular zone. This could reflect scar

10

tissue, the possibility of recurrent or residual disk material is not excluded. Pre- and postcontrast T1-weighted imaging can be performed if clinically warranted.

2.  Moderate to severe central spinal canal stenosis at L3-L4 and L4-L5, unchanged from the comparison study.

(Tr. at 501.)

On October 5, 2009, A. Jake Neukom, M.P.T., noted that Plaintiff "has not benefitted from the use of physical therapy" and that she was "ambulating with the use of a standard cane with mild antalgia." (Tr. at 520.)

Plaintiff testified at the administrative hearing on March 16, 2010, that she can use buttons and zippers, tie shoe laces, and pick up coins, although picking up the coins is difficult. (Tr. at 36.) Plaintiff noted that although she has had knee problems for several years, no one has recommended surgery. (Tr. at 36.) Plaintiff testified that she had been using a cane since "two years ago." (Tr. at 37.) Plaintiff stated that she cooks, does dishes, does laundry and shops for groceries for short periods of time, but does not do any yard work or gardening. (Tr. at 38-39.) Plaintiff testified that she could lift 10 pounds, stand for 5 minutes before having to sit down, walk one-third of a city block at a time, and sit for five or ten minutes before having to get up. (Tr. at 39.)

The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who, "to meet the demands of light work, [can] never use ladders, scaffolds or ropes, only occasionally use ramps or stairs, stoop, kneel, crouch, crawl or balance and the individual should never use (INAUDIBLE) mechanical or power tools." (Tr. at 43.) The ALJ then asked whether such a person could perform Plaintiff's past relevant work and the VE responded that such a person could  perform the fast food position or the dietary aide position. (Tr. at 43.) When Plaintiff's counsel asked if such person could work if they had "the capacity to sit 15 minutes, stand 15 minutes and walk five minutes with a cane and could not lift more than ten to 20 pounds but has

11

to be in a recliner an hour and a half in the morning hours and an hour and a half in the afternoon." (Tr. at 44.) The VE responded that there is no work that such a person could perform. (Tr. at 44-45.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Soc. Sec.,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976)).

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2.   Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 17.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that "[t]he Administrative Law Judge erred in assessing the claimant's medical problems; in assessing the claimant's residual functional capacity; and in concluding that the claimant could perform substantial gainful activity." (Doc. 17 at 13.) Plaintiff contends that the ALJ erred in not adding asthma and urological problems with recent surgery for a large cysteroedema and bowel outlet obstruction to the list of severe impairments at Step Two. (Doc. 17 at 14-15.) Plaintiff also challenges the ALJ's conclusion at Step Three that despite any added and accumulative effects from Plaintiff's obesity, Plaintiff ambulated adequately and retained a functional range of motion, because Plaintiff maintains that her gait was affected and that although she was prescribed an additional cane in 2009, she was "advised" to use a cane in June 2005 and that a cane was prescribed for her in August 2005. (Doc. 17 at 16-19.) Plaintiff further contends that the ALJ erred by not adopting the opinion of Plaintiff's treating physician, Dr. Schall, relative to her limitations and abilities. (Doc. 17 at 19-25.)

Defendant responds that any error at Step Two in failing to include asthma and urological problems in the list of severe impairments is harmless because even one severe impairment is sufficient to proceed to Step Three. (Doc. 21 at 9-11.) Defendant also argues that, at Step Three, the ALJ did not err because the ALJ expressly considered Plaintiff's obesity and Plaintiff does not explain how her cane use and obesity could meet a Listing. (Doc. 21 at 12-13.) Defendant further contends that the ALJ did not err in his consideration of Dr. Schall's opinion because internal inconsistencies were noted by the ALJ and thus the ALJ's hypothetical was appropriate. (Doc. 21 at 13-16.)

### a.     Severe Impairments at Step Two

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

In the instant case, the ALJ found that Plaintiff's degenerative changes of the lumbar and cervical spine, status post-laminectomy, obesity, carpal tunnel syndrome, post-left release procedure, arthritic changes of the knees, osteoarthritic changes, bilateral thumbs, and history of high blood pressure were "severe" within the meaning of the second sequential step. (Tr. at 13.) Plaintiff contends that the ALJ improperly omitted Plaintiff's urological problems and asthma. (Doc. 17 at 14.) However, Plaintiff fails to recognize that once Step Two is "cleared" by a finding that some severe impairment exists, then the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 Fed. App'x at 457.

"The fact that some of [plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, any alleged omission from the list of severe impairments does not undermine the ALJ's decision.

### b.    Ambulation, Use of a Cane and Obesity at Step Three

Plaintiff also challenges the ALJ's conclusion at Step Three that despite any added and accumulative effects from Plaintiff's obesity, Plaintiff ambulated adequately and retained a functional range of motion. Plaintiff maintains that her gait was affected and that although she was prescribed an additional cane in 2009, she was "advised" to use a cane in June 2005 and a cane was prescribed for her in August 2005. (Doc. 17 at 16-19.)

As to obesity, the ALJ in a substantial paragraph discussed at some length his consideration of obesity  because "it often complicates existing medical problems, and . . . the consequences of this condition may not be readily apparent." (Tr. at 17.) The ALJ considered the "added and accumulative effect" obesity played on Plaintiff's "ability to function, and to perform routine movement and necessary physical activity within the work environment." (*Id.*) The ALJ noted that Plaintiff's "neurological functions in terms of motor power, sensation and cranial nerve functions were largely intact, and her musculoskeletal and extremity reviews were generally free from deformity, clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes." (Tr. at 17.) Therefore, it cannot be said that the ALJ failed to consider obesity.

As to the ALJ's findings regarding ambulation and use of a cane, Plaintiff focuses on the fact that although she was prescribed a cane in 2009, which the ALJ noted, she was "advised" much earlier – in 2005 – to use a cane. (Doc. 17 at 17-19.) Dr. Carver's advice in 2005, however, was based on a specific problem: falling. Dr. Carver did not advise Plaintiff to use a cane because of problems ambulating. Dr. Carver noted that Plaintiff "has a cane at home and she was advised

to use it to reduce her risk of falls." (Tr. at 484.) In addition, as noted by the ALJ, although Plaintiff may have exhibited an antalgic gait at times (Tr. at 229), and even as late as September 2009, Plaintiff's physical therapy included "[g]ait training, balance" and "strengthening" and her rehabilitation potential was "good." (Tr. at 518.) In addition, in October 2009, Plaintiff's physical therapist noted that she was "ambulating with the use of a standard cane with mild antalgia." (Tr. at 520.) Therefore, Plaintiff was able to ambulate without a cane until late 2009 and, even after that, was able to ambulate well with the aid of a standard cane. Finally, strength tests consistently confirmed lower extremity strength of 4 or 5 out of 5. (Tr. at 339, 345, 435.) I therefore suggest that the ALJ properly considered the impairments at Step Three and that his findings are supported by substantial evidence.

### c.   Treating Physician

Plaintiff contends that the ALJ failed to properly give controlling weight to Plaintiff's treating physician, Dr. Schall. (Doc. 17 at 21-25.) Plaintiff focuses on Dr. Schall's conclusions exhibited in a form completed on July 3, 2008, wherein he indicated that Plaintiff's "level of pain with sustained walking/standing" was "severe," that her complaints were consistent with objective findings, that her pain "frequently" "interfere[d]" with her "ability to maintain attention and concentration to complete tasks in a timely manner," that she did not need to elevate her lower extremities for 2 or more hours in an 8-hour period, but checked "no" when answering the question whether Plaintiff can "stand/walk six hours of an eight hours/day on a sustained basis." (Tr. at 372.)

I note at the outset that to the extent that Dr. Schall's conclusions are inconsistent with a capacity to perform any work, such a conclusion is not entitled to controlling weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v.*

*Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008).

The next question is whether the ALJ's decision to give this opinion less than significant weight because the conclusions were internally inconsistent (Tr. at 18) was made in accordance with the required findings and is supported by substantial evidence.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and

the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). This rule applies when the treating source opinion is a *medical* opinion; however, "[w]hen a treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work' – the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 492-93 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d), 1527(e), 416.927(e); Soc. Sec. Ruling 96-5p; and *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

In the instant case, the opinion of Dr. Schall upon which Plaintiff relies is a form with checkmarks. (Tr. at 372.) I suggest that a checkmark on a form is "an opinion on an issue reserved to the Commissioner" that is "not entitled to any particular weight." *Turner,* 381 Fed. App'x at 492-93. I therefore suggest that the ALJ's stated reasons for declining to give it significant weight are sufficient to satisfy the regulations and the ALJ's decision that Dr. Schall's opinion was inconsistent with the objective medical findings is supported by substantial evidence. (Tr. at 17-18.)

As noted by the ALJ, although the conclusions on Dr. Schall's form indicate that Plaintiff had  frequent interference in her ability to maintain concentration, there is no objective evidence in the record to support that finding and none of Dr. Schall's notations during his examinations of Plaintiff mention any cognitive issues. In addition, the objective evidence provided by Dr. Schall when examining Plaintiff does not support his findings that she is incapable of any light work. Strength tests consistently confirmed lower extremity strength of 4 or 5 out of 5. (Tr. at 339, 345, 435.) In September 2009, the physical therapist noted Plaintiff was able to ambulate well with the use of a cane and that her potential for strength building and rehabilitation was "good." (Tr. at

518.) Plaintiff's treatment was conservative, i.e., prescription pain medication. (Tr. at 475.) As to Plaintiff's continuing complaints of knee pain, she testified that no one recommended surgery. (Tr. at 36.) Such modest treatment is inconsistent with a finding of total disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007). In addition, Plaintiff's own testimony established that she is able to perform functions that are also inconsistent with total disability as opined by Dr. Schall, i.e., that she cooks, does dishes, does laundry and shops for groceries for short periods of time, but does not do any yard work or gardening. (Tr. at 38-39.) Finally, I suggest that the ALJ's hypothetical and functional capacity parameters properly utilized the results found in the RFC assessment (Tr. at 301-06) and were consistent with the objective medical evidence of record as well as Plaintiff's own testimony regarding her activity level. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.  Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.


## III.  **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d

590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                          s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                          CHARLES E. BINDER
Dated: December 28, 2011                  United States Magistrate Judge




**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 28, 2011                  By        s/Patricia T. Morris
                                          Law Clerk to Magistrate Judge Binder